**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375



RECEIVED
SEP 14 2012
U.S.D.C. S.D. N.Y.
CASHIERS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GRACIELA ROMAN, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**THE DINEX GROUP, LLC and DANIEL BOULUD,**<br><br>**Defendants.** | **AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Graciela Roman ("Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.       This lawsuit seeks to recover minimum wages, overtime compensation, spread-of-hours pay, misappropriated tips, and other wages for Plaintiff and her similarly situated co-workers – servers, bussers, runners, bartenders, hosts, and all other "tipped restaurant workers" – who work or have worked at: Bar Boulud – located at 1900 Broadway, New York, New York 10023; Daniel – located at 60 East 65th Street, New York, New York 10065; Café Boulud & Bar Pleiades – located at 20 East 76th Street, New York, New York 10021; db Bistro Moderne – located at 55 West 44th Street, New York, New York 10036; Boulud Sud – located at 20 West 64th Street, New York, New York 10023; Epicerie Boulud –  located at 1900 Broadway, New York, New York 10023; and DBGB Kitchen and Bar – located at 299 Bowery, New York, New York 10013 (collectively, the "Boulud Restaurants").

2.      The Boulud Restaurants are owned, operated, and controlled by Defendants The Dinex Group, LLC and Daniel Boulud (collectively "Defendants").   Several of the Boulud Restaurants have earned dining awards and accolades, including Daniel, which has been cited as "one of the ten best restaurants in the world" by the International Herald Tribune, has earned three Michelin stars, a coveted four star rating from the New York Times and Wine Spectator's "Grand Award," and is ranked eighth among Restaurant Magazine's "World's 50 Best Restaurants."      All   of   the   Boulud   Restaurants   are   listed   on   Boulud's   webpage, www.danielnyc.com, as well as the Dinex Group, LLC's employee handbook.

3.      Defendant Daniel Boulud ("Boulud"), the Chef and Owner of the Boulud Restaurants, has been described as "the name, brain and palate behind one of the country's gold-plated dining empires."  Boulud's culinary accolades include James Beard Foundation awards for "Outstanding Restaurant," "Outstanding Restaurateur," "Best Chef, New York City," and "Outstanding Chef of the Year."  In addition, he has been named "Chef of the Year" by the Culinary Institute of America. Aside from working in the kitchen, Boulud spends a large portion of his time managing and maintaining the Boulud Restaurant enterprise.

4.      In 1988, Boulud co-founded Defendant The Dinex Group, LLC (the "Dinex Group") as a management company to manage his portfolio of businesses, consisting of restaurant development, management, consulting, and other food-related businesses.  The Dinex Group currently consists of "a group of fine dining restaurants and a catering company headed by Chef Daniel Boulud." Together, Defendants oversee an international enterprise with more than 900 employees. According to the Dinex Group's employee handbook: "Each operation of the Dinex Group upholds the same exacting standards for quality, superior customer service and hospitality.  No matter where you work, you are considered to be part of a large team 'the Daniel Boulud Family' ... "

5.      At all times relevant, Defendants paid Plaintiff a reduced, tipped minimum wage rate.  Defendants, however, did not satisfy the requirements under the Fair Labor Standards Act or the New York Labor Law by which they could take a tip credit towards the basic minimum hourly rate paid to Plaintiff.

6.      In that regard, Plaintiff was required to engage in a tip distribution scheme where tips were shared with Polishers, Expeditors and Maitre d's, employees in positions that are not entitled to tips under the Fair Labor Standards Act or the New York Labor Law.

7.      Additionally, throughout Plaintiff's employment, Defendants required Plaintiff to spend a substantial amount of time performing non-tip producing "side work," including, but not limited to: cleaning service trays; carrying ice to the bar; setting up outdoor tables; brining butter up from the kitchen; preparing the bread station; attending pre-shift meetings; polishing glasses; cleaning the bread station; washing placemats; wrapping bread; changing out napkins and tablecloths; taking out garbage; sweeping floors; cleaning and setting up tables; and stacking outdoor tables.  As a result of this practice, Plaintiff regularly spent in excess of twenty percent of her time at work engaged in a non-tipped capacity.

8.      At all times relevant, Defendants charged groups of five customers or more, including customers hosting private banquets, a compulsory gratuity and/or service charge.  Plaintiff regularly performed work and received gratuities for groups of five customers or more and/or private banquets.  As a result, Plaintiff earned both an hourly rate and portions of the mandatory gratuities/service charges paid by groups of five customers or more and/or hosts of private banquets. Defendants illegally failed to include the mandatory gratuities/service charges distributed to Plaintiff in her regular rate.  Thus, for hours worked over 40 per week, Defendants failed to compensate Plaintiff at the correct overtime rate.

9.      Upon information and belief, Defendants applied the same employment policies, practices, and procedures to all tipped restaurant workers at the Boulud Restaurants.

10.      Plaintiff brings this action on behalf of herself and similarly situated current and former tipped restaurant workers who elect to opt-in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and other similarly situated employees of their lawfully earned wages.

11.      Plaintiff also brings this action on behalf of herself and all similarly situated current and former tipped restaurant workers pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the New York Labor Law ("NYLL"), Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

## THE PARTIES

### Plaintiff

**Graciela Roman**

12.      Plaintiff is an adult individual who is a resident of Sunnyside, New York.

13.      Plaintiff was employed by Defendants as a Busser at the Boulud Restaurants from on or around December 26, 2007 to July 2009 and from on or around October 26, 2009 to July 18, 2012. During this period, Plaintiff performed work for Bar Boulud and Boulud Sud.

14.      Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

15.      A written consent form for Plaintiff was filed with the Class Action Complaint.

### Defendants

16.      Defendants jointly employed Plaintiff and similarly situated employees at all times relevant. Each Defendant has had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

17.     Upon information and belief, Defendants are part of a single integrated enterprise that jointly employed Plaintiff and similarly situated employees at all times relevant.

18.     Upon information and belief, Defendants' operations are interrelated and unified.

19.     Upon information and belief, during all relevant times, the Boulud Restaurants shared a common management and were centrally controlled and/or owned by Defendants.

**The Dinex Group, LLC**

20.     Together with the other Defendants, the Dinex Group has owned and/or operated the Boulud Restaurants during the relevant period.

21.     The Dinex Group is a domestic business corporation organized and existing under the laws of New York.

22.     Upon information and belief, the Dinex Group's principal executive office is located at 16 East 40th Street, New York, New York 10016.

23.     At all times relevant, the Dinex Group has been the corporate entity listed on Plaintiff's paychecks and W-2 forms.

24.     The Dinex Group is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

25.     At all times relevant, the Dinex Group maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

26.     The Dinex Group applies the same employment policies, practices, and procedures to all tipped restaurant workers at the Boulud Restaurants, including policies, practices, and procedures with respect to the payment of minimum wage, overtime compensation, spread-of-hours pay, and customer tips.

27.     At all times relevant, the Dinex Group has had the power to transfer the assets or liabilities of the Boulud Restaurants.

28.     At all times relevant, the Dinex Group has had the power to declare bankruptcy on behalf of the Boulud Restaurants.

29.     At all times relevant, the Dinex Group has had the power to enter into contracts on behalf of the Boulud Restaurants.

30.     Upon information and belief, at all times relevant, the Dinex Group's annual gross volume of sales made or business done was not less than $500,000.00.

**Daniel Boulud**

31.     Boulud is a resident of the State of New York.

32.     Boulud is the owner of the Dinex Group and the Boulud Restaurants.

33.     According to the "About Chef Daniel Boulud" section of Boulud's website, www.danielnyc.com/aboutDB.html, Boulud is the "Chef-Owner of several award-winning restaurants" including each of the Boulud Restaurants.

34.     Boulud is identified as the Chef/Owner of the Dinex Group in the Dinex Group employee handbook.

35.     Boulud is identified by the New York State Liquor Authority as a "Principal" of: Daniel, Café Boulud, Bar Boulud/Boulud Sud/Epicerie Boulud, and DBGB Kitchen and Bar.

36.     Boulud has previously admitted he had the power over personnel decisions at Daniel (a Dinex Group Restaurant), including the power to supervise employees, hire and fire employees, set their wages and schedules, retain time and/or wage records and otherwise control the terms and conditions of their employment. *See* **06 CV 13749 (S.D.N.Y.), Docket #4, Page 4, Para. 17.**

37.     Boulud is actively involved in managing the day to day operations of the Boulud Restaurants.

38.     Boulud has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

39.     Boulud and Dinex Group have had the power to transfer the assets or liabilities of the Boulud Restaurants.

40.     Boulud and Dinex Group have had the power to declare bankruptcy on behalf of the Boulud Restaurants.

41.     Boulud and Dinex Group have had the power to enter into contracts on behalf of the Boulud Restaurants.

42.     In an interview with the Wall Street Journal, published on May 31, 2011, Boulud stated, "I feel my places are very personalized with my vision.  I take full responsibility for them and I think I feel connected…I spend a lot of money; of all the restaurant groups I'm the one who has the biggest management company in terms of bodies to manage…I have 200 chefs working for me in New York-we have 600 people working for me and the cooks are at least one-third…"  This article is attached hereto as **Exhibit A.**

43.     In an interview with Fortune, published on May 18, 2012, Boulud stated, "I can veto everything…we spend a lot of time in training, communication and establishing rules in order for the organization to be well oiled and for everybody to understand what the person next to him is doing…We know right away if the chef is not a player, it's like a soccer team.  If the guy can't score, I mean *ca va*, get rid of him."  This article is attached hereto as **Exhibit B.**

44.     Boulud is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed and/or jointly employed Plaintiff and similarly situated employees.

## JURISDICTION AND VENUE

45.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

46.    This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

47.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

48.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

49.    Plaintiff brings the First and Second Causes of Action, FLSA claims, on behalf of herself and all similarly situated persons who have worked as tipped restaurant workers at the Boulud Restaurants in New York, who elect to opt-in to this action (the "FLSA Collective").

50.    Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA Collective were not paid minimum wages for all hours worked and premium overtime compensation for all hours worked beyond 40 per workweek.

51.    All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

52.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

(a)    willfully failing to pay its employees, including Plaintiff and the FLSA

Collective, minimum wages for all hours worked and premium overtime wages for hours that they worked in excess of 40 hours per workweek; and

(b)      willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective, have worked for the benefit of Defendants.

53.      Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by unlawfully taking a tip credit against the minimum wage rate paid to Plaintiff and the FLSA Collective.

54.      Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the FLSA Collective minimum wage for all of the hours they worked.

55.      Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

56.      Plaintiff and the FLSA Collective perform or performed the same primary duties.

57.      Defendants' unlawful conduct has been widespread, repeated, and consistent.

58.      Written consent forms for the following individuals were attached to the Class Action Complaint: Orlando Pena (busser); Isaac Lopez (busser); Luis Espinoza (busser and runner); Galo Penafiel (busser); Mario Patricio Godoy (busser); Pedro Lopez (busser and runner); and Celso Lopez (busser and runner).

## CLASS ACTION ALLEGATIONS

59.      Plaintiff brings the Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of:

> All persons who work or have worked as tipped restaurant workers and similar employees at the Boulud Restaurants in New York between August 10, 2006 and the date of final judgment in this matter (the "Rule 23 Class").

60.     Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

61.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

62.     Upon information and belief, the size of the Rule 23 Class is at least 50 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

63.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

64.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)     whether Defendants violated NYLL, Articles 6 and 19, and the supporting New York State Department of Labor regulations;

(b)     whether Defendants failed to pay Plaintiff and the Rule 23 Class minimum wages for all of the hours they worked;

(c)     whether Defendants correctly compensated Plaintiff and the Rule 23 Class for hours worked in excess of 40 hours per workweek;

(d)     whether Defendants failed to provide Plaintiff and the Rule 23 Class spread-of-hours pay when the length of their workday was greater than 10 hours;

(e)     whether Defendants misappropriated tips and/or service charges from Plaintiff and the Rule 23 Class by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Plaintiff and the Rule 23 Class, and which customers

reasonably believed to be gratuities for Plaintiff and the Rule 23 Class;

(f)     whether Defendants distributed or retained a portion of the tips paid by customers to workers who are not entitled to receive tips under the NYLL;

(g)     whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Rule 23 Class, and other records required by the NYLL;

(h)     whether Defendants failed to furnish Plaintiff and the Rule 23 Class with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance as required by the NYLL;

(i)     whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(j)     the nature and extent of class-wide injury and the measure of damages for those injuries.

65.     The claims of Plaintiff are typical of the claims of the Rule 23 Class she seeks to represent. Plaintiff and all of the Rule 23 Class members work, or have worked, for Defendants as tipped restaurant workers at the Boulud Restaurants in New York. Plaintiff and the Rule 23 Class members enjoy the same statutory rights under the NYLL, including to be paid for all hours worked, to be paid overtime wages, to be paid spread-of-hours pay, and to retain customer tips. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

66.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Rule 23 Class. Plaintiff understands that as class representative, she assumes a fiduciary responsibility to the class to represent its interests fairly and adequately. Plaintiff recognizes that as class representative, she must represent and consider the interests of the class just as she would represent and consider her own interests. Plaintiff understands that in

decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over the class.  Plaintiff recognizes that any resolution of a class action must be in the best interest of the class.  Plaintiff understands that in order to provide adequate representation, she must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.  Plaintiff has retained counsel competent and experienced in complex class actions and employment litigation.  There is no conflict between Plaintiff and the Rule 23 members.

67.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  The individual Plaintiff lacks the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

68.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## PLAINTIFF'S FACTUAL ALLEGATIONS

69.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Graciela Roman**

70.     Defendants did not pay Plaintiff the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that she was suffered or permitted to work each workweek.

71.     Defendants paid Plaintiff using the tip credit minimum wage rate, rather than the full minimum wage rate.

72.     Plaintiff received weekly paychecks from Defendants that did not properly record or compensate her for all the hours she worked.

73.     Defendants paid Plaintiff overtime utilizing the tip credit minimum wage rate, rather than 1.5 times the full minimum wage rate.

74.     Defendants paid Plaintiff overtime without factoring in compulsory gratuities/service charges into her overtime rate.

75.     Defendants required Plaintiff to perform a substantial amount of non-tipped "side work," in excess of twenty percent of her time at work.  During these periods, Defendants compensated Plaintiff at the tipped minimum wage rate rather than the full hourly minimum wage rate.

76.     Defendants repeatedly suffered or permitted Plaintiff to work over 40 hours per week, up to a maximum of approximately 75 hours per week.  Defendants did not compensate Plaintiff at the proper overtime rate for all of the hours she worked in excess of 40 per workweek.

77.     Defendants did not pay Plaintiff one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

78.     Defendants did not allow Plaintiff to retain all of the tips and/or gratuities she earned.

79.     Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Plaintiff earned.

80.     Defendants imposed upon Plaintiff a tip redistribution scheme to which she never agreed.

81.     Defendants unlawfully redistributed part of Plaintiff's tips to Polishers, Expeditors and Maitre d's, employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL.

82.     Upon information and belief, Defendants did not keep accurate records of wages or tips earned, or of hours worked by Plaintiff.

83.     Upon information and belief, Defendants failed to furnish Plaintiff with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

84.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

85.     Defendants failed to pay Plaintiff and the members of the FLSA Collective the minimum wages to which they are entitled under the FLSA.

86.     Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

87.     At all times relevant, Plaintiff and the members of the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

88.     At all times relevant, Plaintiff and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 201 *et seq.*

89.     At all times relevant, Defendants have been employers of Plaintiff and the members of the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

90.     Defendants were required to pay directly to Plaintiff and the members of the FLSA Collective the full federal minimum wage rate for all hours worked.

91.     Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiff and the FLSA Collective of the provisions of subsection 203(m) of the FLSA, and distributed a portion of their tips to workers who do not "customarily and regularly" receive tips.

92.     Defendants required Plaintiff and the members of the FLSA Collective to perform a substantial amount of non-tipped "side work" in excess of twenty percent of their time at work. During these periods, Defendants compensated Plaintiff and the members of the FLSA Collective at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

93.     As a result of Defendants' violations of the FLSA, Plaintiff and the members of the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

94.     Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the

practices described in this Class Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the members of the FLSA Collective.

95.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

96.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

97.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of the FLSA Collective.

98.     Defendants have failed to pay Plaintiff and the members of the FLSA Collective overtime wages for all of the hours that they worked in excess of 40 hours in a work week.

99.     Defendants did not include all compulsory gratuities/service charges when calculating the overtime rate paid to Plaintiff and the FLSA Collective, and thus failed to pay Plaintiff and the members of the FLSA Collective the correct overtime rate when they worked in excess of 40 hours per week.

100.    As a result of Defendants' violations of the FLSA, Plaintiff and the members of the FLSA Collective have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

101.    Defendants' unlawful conduct, as described in this Class Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the

practices described in this Class Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the members of the FLSA Collective.

102.   Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

### THIRD CAUSE OF ACTION
### New York Labor Law – Minimum Wages
### (Brought on behalf of Plaintiff and the members of the Rule 23 Class)

103.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

104.   Defendants failed to pay Plaintiff and the members of the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor regulations.

105.   Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Class Action Complaint.

106.   At all times relevant, Plaintiff and the members of the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the members of the Rule 23 Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

107.   The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiff and the members of the Rule 23 Class.

108.   Defendants were required to pay Plaintiff and the members of the Rule 23 Class the full minimum wage at a rate of (a) $6.75 per hour for all hours worked from August 10, 2006 through December 31, 2006; (b) $7.15 per hour for all hours worked from January 1, 2007 through

July 23, 2009; and (c) $7.25 per hour for all hours worked from July 24, 2009 through the present, under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

109.    Defendants failed to furnish with every payment of wages to Plaintiff and the members of the Rule 23 Class a statement listing hours worked, rates paid, gross wages, and tip allowance claimed as part of their minimum hourly wage rate, in violation of the NYLL and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

110.    Defendants required Plaintiff and the members of the Rule 23 Class to share gratuities with non-tip eligible employees. As a result, Plaintiff and the members of the Rule 23 Class are entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate.

111.    Defendants required Plaintiff and the members of the Rule 23 Class to perform a substantial amount of non-tipped "side work" in excess of twenty percent of their time at work. During these periods, Defendants compensated Plaintiff and the members of the Rule 23 Class at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 12 N.Y.C.R.R. Part 137 and Part 146.

112.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff and the members of the Rule 23 Class, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

113.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated

damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Unpaid Overtime**
**(Brought on behalf of Plaintiff and the members of the Rule 23 Class)**

114.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

115.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the members of the Rule 23 Class.

116.    Defendants have failed to pay Plaintiff and the members of the Rule 23 Class the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

117.    Defendants failed to pay Plaintiff and the members of the Rule 23 Class 1.5 times the full minimum wage rate for hours worked in excess of 40 per week.

118.    Through their knowing or intentional failure to pay Plaintiff and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per week, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

119.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Spread-of-Hours Pay
**(Brought on behalf of Plaintiff and the members of the Rule 23 Class)**

120.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

121.     Defendants willfully failed to pay Plaintiff and the members of the Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

122.     By Defendants' failure to pay Plaintiff and the members of the Rule 23 Class spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

123.     Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
### New York Labor Law –Tip Misappropriation
**(Brought on behalf of Plaintiff and the members of the Rule 23 Class)**

124.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

125.     At all times relevant, Plaintiff and the members of the Rule 23 Class have been employees within the meaning of NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

126.   At all times relevant, each Defendant has been an employer within the meaning of the NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

127.   The wage payment provisions of Article 6 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiff and the members of the Rule 23 Class.

128.   Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiff and the members of the Rule 23 Class in violation of NYLL, Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

129.   Defendants unlawfully retained part of the gratuities earned by Plaintiff and the members of the Rule 23 Class in violation of NYLL, Article 6, § 196-d and the supporting New York State Department of Labor Regulations.

130.   Defendants required Plaintiff and the members of the Rule 23 Class to share part of the gratuities they received with employees other than waiters, servers, bussers, or similar employees, in violation of NYLL, Article 6 § 196-d and the supporting New York State Department of Labor Regulations.

131.   By Defendants' knowing or intentional demand for, acceptance of, and/or retention of part of the gratuities received by Plaintiff and the members of the Rule 23 Class, Defendants have willfully violated the NYLL, Article 6, § 196-d and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 137 and Part 146, entitling Plaintiff and the members of the Rule 23 Class to the value of the misappropriated gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SEVENTH CAUSE OF ACTION
### New York Labor Law– Recordkeeping Violation
### (Brought on behalf of Plaintiff and the members of the Rule 23 Class)

132.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

133.    Defendants have willfully failed to supply Plaintiff and the members of the Rule 23 Class notice as required by NYLL, Article 6, § 195, in English or in the language identified by Plaintiff and the members of the Rule 23 Class as their primary language, containing Plaintiff's and the members of the Rule 23 Class' rate or rates of pay and  basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

134.    Defendants have willfully failed to supply Plaintiff and the members of the Rule 23 Class with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

135.    Due to Defendants' violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendants one hundred dollars for each work week

that the violations occurred or continue to occur, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.     That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all tipped restaurant workers who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at the Boulud Restaurants in New York.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.     Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.     Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*, NYLL, Article 19,

§§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

  F.  Unpaid minimum wages, overtime pay, spread-of-hours pay, misappropriated tips, and liquidated damages permitted by law pursuant to the NYLL;

  G.  One hundred dollars for each work week that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars, as provided for by NYLL, Article 6 § 198(1)-d.

  H.  Prejudgment and post-judgment interest;

  I.  An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

  J.  Reasonable attorneys' fees and costs of the action; and

  K.  Such other relief as this Court shall deem just and proper.

Dated: New York, New York
   September 14, 2012

Respectfully submitted,

Joseph A. Fitapelli

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the Putative Class*

# EXHIBIT "A"

Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com

See a sample reprint in PDF format.        Order a reprint of this article now

## THE WALL STREET JOURNAL.
WSJ.com

NY CULTURE   |   May 31, 2011

# Daniel Boulud's Delicious Decade

By ALEXANDRA CHENEY

Chef Daniel Boulud's DB Bistro Moderne is celebrating its 10th anniversary on Wednesday—which means the DB Burger, a $37 sirloin burger filled with braised short ribs, black truffle, and served on a Parmesan bun, is also turning 10. If that's not cause enough to celebrate, there's a six-course meal for 60 (at more than $200 per person) Wednesday at DB Bistro Moderne to mark the occasion.

Raised on his family's farm in St. Pierre de Chandieu, France, Mr. Boulud moved to New York 30 years ago, when he was 27, and has lived above Daniel, his award-winning restaurant on 65th Street, for the last 13 years. He now owns six restaurants, two bars and a catering company in the city.

The Journal sat down with Mr. Boulud in his "sky box"—a carpeted room with a four-person booth that overlooks the kitchen in Daniel—to talk about his career as both a chef and restaurateur.



Getty Images

Chef Daniel Boulud

**More**

Speakeasy: Boulud on Building a Brand

**In the life of a New York restaurant, 10 years is a big accomplishment. How do you account for the success?**

All of my restaurants are chef driven, which means the food program is the most important. DB Bistro was not a classic French bistro the way maybe one would expect of the word "bistro," especially for someone who knows me from Lyon. I wanted to do this Paris-New York combination. I always felt there was a new wave of bistro where it was more about the food—the authenticity was more important, more in the food than in the décor. That is why we call it Bistro Moderne, because Moderne has no connotation to a particular time. It could be Moderne in the 1950s, in the '60s, '70s. This one was an interpretation of the moderne in 2000.

**Explain your decision to name almost all of your restaurants—including your newest, Épicerie Boulud—after yourself.**

I know it's crazy. One would think, "Oh, if this guy was really trying to build a brand he would not put his name on it." I feel my places are very personalized with my vision. I take full responsibility for them, and I think I feel connected. It is not at all an ego trip; we do not know how to name it and every time we try to name something a little bit out of my name, somebody would jump on us and say, "Oh, I own this name, I've done this one." I had Daniel first. Daniel was named because I wanted to make sure that I would be super serious and Daniel represents everything that I have done in my life. But if I call my restaurant Boulud or Daniel Boulud, I think it might be a little too pretentious. I rather use my last name to promote something casual whereas my first name is to promote something serious. This way I am sending, not a double message, but I am taking cooking seriously.

**How do you keep pace with what New York diners want?**

I think restaurants definitely move in cycles, but they are much shorter than a normal generation. It's not a 20-year cycle; I would say it has a five-year cycle. There is a renewal to happen. Longevity comes with commitment and care. I spend a lot of money; of all the restaurant groups I'm the one who has the biggest management company in terms of bodies to manage. I have a CEO, a CFO, a director of HR. There is a director for everything a chef needs, a manager needs. I manage each of the restaurants separately in order to maintain consistency and quality. If something happens, an emergency happens, the restaurant doesn't suffer. I have 200 chefs working for me in New York—we have 600 people working for me and the cooks are at least one-third. Of that, there is the senior, the super junior. There is a window for them as they are maturing and staying with us; between the age of 27 and 30 they are crystallizing into a chef position.

**But you aren't known for your chefs as much as the food you create—like the DB Burger at DB Bistro Moderne, for example.**

If I succeed as a cook and as a chef it's because I know how to run the kitchen well and I think I'm also making sure that we monitor our chefs very closely so they can run the kitchen well. A healthy financial kitchen is a secure kitchen. When you go through the summer months, when things get slow and tight, if you didn't do a good job managing your kitchen when things were good, you could go bust in two months. I remember the year we opened DB, we opened in May 2001 and then September 11 happened and it really shook the restaurant world. The DB Burger I think is the bull's-eye of the bistro. It is a gourmet burger. Every restaurant has these bull's-eyes. Every time the customer come they find new rings in the bull's-eye and they feel even more attracted.

**You also have restaurants in Miami, Singapore and many other cities. How are patrons in New York distinct?**

People come to New York to eat. We have so many regular customers. It's not someone who lives across the street and walks by; it's someone who will cross town, or someone who lives in tri-state area or someone who lives in Oklahoma and every time they come in they come to me. They trust me at all levels. They come once a month, once a year, but they come back.

# EXHIBIT "B"



# Why Daniel Boulud still lives above his store

By Shelley DuBois, writer-reporter May 18, 2012: 11:25 AM ET

**The celebrated chef describes his favorite parts of the job and why he chooses to literally live above his signature restaurant in Manhattan, Daniel.**

FORTUNE -- Chef Daniel Boulud has a beautiful office. The walls sport pictures of the chef with celebrities, the wooden shelves are full of perfectly spaced awards and trophies, and, perhaps most importantly, its huge windows allow whoever is inside to monitor the bustle of his flagship venue, Daniel, in Manhattan.



Chef Daniel Boulud

The restaurant is Boulud's home, quite literally. He has an apartment above it. And though he has opened several other restaurants in Manhattan, this one is the heart of his prestigious culinary career. The restaurant has received three coveted Michelin stars and a four-star rating from the *New York Times*, among other awards. Boulud, 57, has also won recognition for his talents as a chef and restaurateur from the James Beard Foundation and the Culinary Institute of America.

Because of his prowess in the kitchen, his job titles have grown and now include entrepreneur, book author, consultant, and celebrity. But here, he talks to *Fortune* about the basics and why he can still fillet a fish with the best of them.

**Fortune: What goes through the mind of a top-tier chef?**

Daniel Boulud: I believe that a great chef has to worry about more than cooking. I mean I may have to worry about other things in the business but still, cooking remains the thing that will give me the most comfort and happiness. It is my refuge.

**After all this time, you still love it?**

Yeah, well, what else am I going to do? I hate accounting. I do like service, taking care of the customer, the guest relations, and the public relations. But, I mean, I do it because someone has to do it and because I'm the brand and the image, but I'd rather stay in the kitchen all the time and not bother.

**MORE: Coke CEO Kent's leadership lesson**

I do it so my chefs can keep cooking. I could do their job any time, except I have other jobs to fulfill.

**How do you manage such a full kitchen, full of smart people with different ideas?**

Everybody has talent, for sure, to be associated with us and to work at this level. We definitely share our ideas, but I can veto everything. Sometimes I love it, and sometimes I hate it. And if I hate it, it doesn't mean that it's not good, it's just not me, that's all.

We are control freaks, we are organized and we have a lot of discipline among the staff. We spend a lot of time in training, communication, and establishing rules in order for the organization to be well oiled and for everybody to understand what the person next to him is doing.

That's why the kitchen is divided into four major areas: the meat, the fish, the entrée, and the cold station. There's a chef for each area. The executive chef makes sure that everybody functions well.

**MORE: A Harvard MBA's radical quest to erase his debt**

Sometimes there are eight cooks involved in one plate. We know right away if the chef is not a player, it's like a soccer team. If the guy can't score, I mean, *ça va*, get rid of him.

**That's tough love. The back of the house can be such a stressful environment.**

I know, but that's the problem with food. I mean, I'm redoing my apartment now, and it's such an agony of time to get each

detail done. But with food, you cannot wait. With food, it has to be cooked and go. If we are talking about fish that is perfectly cooked at the perfect temperature, you cannot just reheat it every five minutes. It's all about the science of timing.

**But can't modern kitchen equipment help with that?**

It's nice to look at technology, it's nice to look at progress, it's nice to take advantage of it, but a cook should still learn how to cook first and foremost.

For me, putting food in a bag is not cooking, but it's delicious and it works and we use it. But besides that, we try to teach the cooks how to cook as well -- how to cook a fish perfectly on the bone.

**If I were you, and I had all these trophies and that giant shoe over there...**

The giant shoe is not mine, it's Shaq's shoe.

**Ah. Well, if I had those accolades, it would be easy for me to rest on my laurels. Don't you ever want to just let the machine you created run?**

No, no. I look forward to creating new things. We have two restaurants opening this year in Montreal and Toronto. Every city is very different and even every neighborhood is very different. In New York, opening a restaurant in downtown is totally different than uptown.

**MORE: After Yahoo: Why do powerful people lie?**

**Do you have a favorite?**

This is my home base. I live above it. I have my office here and I have the kitchen downstairs. This, Daniel, represents everything I worked for all my life. The other restaurants, you might see me there often, but at the same time, at Daniel, you might see me much more often.

**You said you've been working all your life for this, what are you working for now?**

I've been working 80 hours a week for the past 40 years. After 40 years plus of cooking, I deserve to take a weekend. Is that asking too much?

**Recommended for You**

Where should my mom invest $20,000?

The myth of the 'entrepreneurial employee'

Greed, debt and Matt Taibbi

Can FarmVille sequel save Zynga's bacon?

**Around the Web**

$100,000 income: No big deal anymore
Bankrate.com

Average Salary of 20-Somethings
SavvySugar

Do You Stand Out as a Leader?
Harvard Business Review

[what's this]

© 2012 Cable News Network. A Time Warner Company. All Rights Reserved. Terms under which this service is provided to you. Privacy Policy. Ad choices ▷.

9/6/2012 4:41 PM