**FITAPELLI & SCHAFFER, LLP**
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRACIELA ROMAN and DANIEL JONES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>THE DINEX GROUP, LLC and DANIEL BOULUD,<br><br>Defendants. | 12 Civ. 6156 (AKH) |

**DECLARATION OF BRIAN S. SCHAFFER
IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF THE SETTLEMENT,
SERVICE PAYMENTS, AND ATTORNEYS' FEES AND COSTS**

I, Brian S. Schaffer, declare as follows:

    1.    I am a partner and founder of the firm of Fitapelli & Schaffer LLP ("F&S") in New York, New York. F&S is a well-respected 5-attorney firm that represents plaintiffs in a wide variety of employment matters, including individual, class and collective action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

    2.    I have been one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims on behalf of the Collective in this matter.

    3.    I make these statements based on personal knowledge and would so testify if called as a witness at trial.

4.  This proposed settlement would resolve claims brought by Plaintiffs Graciela Roman and Daniel Jones (collectively, "Plaintiffs") on behalf of themselves and similarly situated servers, bussers, runners, bartenders, hosts, and other "tipped restaurant workers" who work or have worked for Defendants The Dinex Group, LLC and Daniel Boulud (collectively, "Defendants") at Bar Boulud, Daniel, DBGB, and Boulud Sud (collectively, the "Dinex Restaurants"). Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to pay them and other tipped restaurants workers at the Dinex Restaurants the appropriate minimum wage, overtime compensation, spread-of-hours, and/or gratuities.

## PROCEDURAL HISTORY

**Overview of Investigation**

5.  Before initiating the instant action, F&S conducted thorough investigations, which included factual investigation and legal research on the underlying merits of the claims, the proper measure of damages, and the likelihood of collective and class action certification. In that regard, F&S conducted in-depth interviews with Plaintiffs and other tipped restaurant workers to determine their hours worked, their wages paid, the nature of their duties, and other relevant information. F&S also obtained and reviewed hundreds of pages of documents from Plaintiffs and putative plaintiffs, including pay stubs, tip sheets, employee manuals and handbooks, and correspondences.

**Commencement of Litigation**

6.  On August 10, 2012, Plaintiff Roman commenced this action on behalf of herself and all similarly tipped restaurant workers who have been employed by Defendants at one or more of the Dinex Restaurants. *See* ECF No. 1. The Complaint alleged that Defendants denied

tipped restaurant workers who had worked at the Dinex Restaurants minimum wage, overtime compensation, and spread-of-hours pay in violation of the FLSA and NYLL. The Complaint further asserted that Defendants misappropriated customer tips from tipped restaurant workers in violation of NYLL § 196-d, by allocating a portion of the mandatory tip pools to polishers and expeditors, positions that are not eligible to receive tips under the FLSA and NYLL. *See Id.*

7. On September 6, 2012, Defendant The Dinex Group, LLC ("Dinex") filed its Answer to the Complaint, denying the material allegations. *See* ECF No. 31.

8. Also on September 6, 2012, Defendant Daniel Boulud ("Boulud") moved to dismiss the Complaint as asserted against him pursuant to Fed. R. Civ. P. 12(b)(6), claiming that Plaintiffs failed to sufficiently plead that he was an "employer" under the FLSA and NYLL. *See* ECF Nos. 32-34.

9. In response to Boulud's motion to dismiss, Plaintiffs filed an Amended Complaint on September 14, 2012. *See* ECF No. 39. The Amended Complaint included additional factual allegations relating to Plaintiffs' claim that Boulud qualified as an "employer" under the FLSA and NYLL. *Id.*

10. Thereafter, Defendants each filed Answers to the Amended Complaint on September 28, 2012, and an Order terminating Boulud's motion to dismiss was entered by the Court on October 15, 2012. *See* ECF Nos. 42, 43, 46.

**Plaintiffs' Motion for Conditional Certification**

11. In preparation for Plaintiffs' motion for conditional certification pursuant to 29 U.S.C. § 216(b), F&S interviewed Plaintiffs, opt-in Plaintiffs and numerous putative plaintiffs, obtained four supporting declarations, and conducted extensive legal research regarding the specific nature of Defendants' violations of the FLSA and uniform operation of the Dinex Restaurants.

12. F&S also received and reviewed substantial documents from named and opt in Plaintiffs and other tipped restaurant workers regarding Defendants' time keeping, compensation and tip retention policies, company-wide employment practices, and corporate structure.

13. On October 18, 2012, Plaintiffs filed a motion for conditional certification pursuant to 29 U.S.C. § 216(b). *See* ECF Nos. 48-50. In their moving papers, Plaintiffs argued that a collective consisting of all tipped workers at the Dinex Restaurants was warranted given that Defendants subjected all tipped restaurant workers to the same unlawful compensation policies. In support, Plaintiffs submitted ten exhibits, including four supporting declarations, evidencing that (a) Dinex uniformly violated the FLSA with respect to all tipped restaurant workers, and that (b) the Dinex Restaurants operations are interrelated, unified, and centrally controlled by Defendants. *See Id.*

14. Due largely to the efforts of Roman, 28 individuals had opted in to the case by the time Plaintiffs filed their motion for conditional certification, and many more had been informed of the case.

15. After Plaintiffs filed their certification motion, Defendants agreed to stipulate to conditional collective action certification and entered into negotiations with Plaintiffs regarding the scope of the collective and the content of the FLSA notice. On November 27, 2012, the parties executed a stipulation conditionally certifying the collective action, which was signed by the Court on or around November 28, 2012. *See* ECF No. 53.

16. Shortly thereafter, Defendants produced a class list, and notice of the federal claims was issued to putative plaintiffs.

17. After sending notice, a total of 88 tipped restaurant workers, including Plaintiffs (collectively, the "Collective"), had filed FLSA consents to join in the case. *See* ECF, generally.

**Initial Discovery**

18.     On December 4, 2012, Defendants served document demands and interrogatories, and noticed a deposition for Plaintiff Roman.  Defendants' discovery requests specifically stated that responses were required from all individuals who filed FLSA consents in the case.  On December 7, 2012, Plaintiffs served their own document demands and interrogatories, and noticed depositions for the named Defendant plus five other Dinex managers.

19.     On December 14, 2012, a conference was held and a Case Management Plan was adopted by the Court.  *See* ECF No. 54.  At the conference, the Court affirmed that all opt in Plaintiffs were obligated to respond to Defendants' discovery requests.

20.     Accordingly, F&S reached out to all Plaintiffs and opt-in Plaintiffs to inform them of their discovery obligations, set up meetings to draft and verify interrogatory responses, and make arrangements to receive all relevant documents.  Between the time Defendants' served discovery requests and the present, F&S met and/or conferred with 69 Collective members, each of whom completed discovery responses and produced responsive documents.

21.     In turn, Defendants disclosed over 8,000 of pages of documents in response to Plaintiffs' discovery requests, including time records, payroll registers, private event contracts, tip allocation sheets, employee personnel files, training manuals, and job descriptions pertaining to the Collective and each Dinex Restaurant.

22.     Additionally, F&S continued to meet with named and opt in Plaintiffs regarding Defendants' time keeping practices, compensation policies and corporate structure, and Defendants' discovery production.

23. After reviewing, analyzing, and digesting all of the documents produced by Plaintiffs, opt in Plaintiffs, and Defendants, F&S was able to prepare a comprehensive collective-wide damages analysis, and evaluate the strengths and weaknesses of the collective claims.

24. Roman was deposed by Defendants on February 8, 2013 and March 6, 2013 for a total combined time of seven hours. In preparation for the depositions, Roman met with F&S on two separate occasions for approximately 4.5 combined hours to review the facts of the case, the allegations in the Complaint, and Defendants' document production.

25. On March 4, 2013, Defendants sent a letter to F&S regarding opt in Plaintiffs' responses to discovery requests, stating that Defendants "will move to dismiss any Opt In Plaintiffs who have not provided responses" by March 18, 2013.

**Initial Settlement Discussions**

26. Following the completion of Roman's depositions, the parties entered into preliminary settlement discussions and agreed to hold an in person settlement meeting.

27. In preparation for the settlement meeting, F&S utilized the time, payroll and tip records produced by Defendants to calculate damages for the Collective.

28. F&S also met with Roman for over three hours to discuss the strengths and weaknesses of the case, as well as the parameters of an acceptable collective-wide settlement.

29. On April 9, 2013, counsel for the parties, along with Roman, met for over two hours to discuss settlement. At the meeting, Defendants argued that their use of the tip credit was lawful, that all employees who had received tips at the Dinex Restaurants were entitled to tips under the FLSA and NYLL, and that each Dinex Restaurant subjected workers to separate employment policies and procedures. Defendants also claimed that Plaintiffs' tip misappropriation claims presented a conflict of interest, as many Collective members had

worked as a polisher and/or expeditor at some time during their employment. Further, Defendants presented evidence that the Dinex Restaurants had modified their wage and hour policies on or around February 1, 2011.

30. Even though a settlement was not reached at the settlement meeting, the parties continued to engage in an open dialogue in an effort to resolve the case. In addition, the settlement meeting allowed the parties to better assess the strengths and weaknesses of their case, and helped developed a framework for ongoing settlement negotiations.

**Defendants' Motion for Partial Judgment on the Pleadings**

31. On April 19, 2013, Defendants filed a motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that Plaintiffs' FLSA minimum wage claim should be dismissed to the extent that it is based upon the "20%" rule and Plaintiffs' description of their duties at the Dinex Restaurants. *See* ECF No. 112-114.

32. On April 25, 2013, prior to Plaintiffs filing their opposition, the Court denied Defendants' motion, stating that the "issues raised by the pleadings are too complicated, and too fact-intensive, to be resolved by a '12(c)' motion." *See* ECF No. 115.

**Additional Discovery and Depositions**

33. On May 10, 2013, a status conference was held with the Court. At the conference, the parties discussed ongoing discovery issues, including the failure of certain opt in Plaintiffs to provide responses to Defendants' discovery requests and Defendants' intention to have such individuals dismissed from the case.

34. Following the status conference, the parties agreed upon a schedule for an additional 14 depositions, consisting of five Defendants and nine opt in Plaintiffs.

35. Thereafter, Plaintiffs took the depositions of Boulud on May 21, 2013 and Brett Traussi (as corporate representative of The Dinex Group, LLC pursuant to Fed. R. Civ. P. 30(b)(6)) on June 4, 2013, and Defendants took the depositions of Orlando Pena on May 23, 2013 and Gabriel Pucha on June 3, 2013. In preparation for defending Orlando Pena and Gabriel Pucha at their depositions, F&S met with each opt in Plaintiff for approximately two hours each to review the facts of the case, the allegations in the Complaint, and Defendants' document production. In preparation for taking Defendants' depositions, F&S conducted significant research regarding Boulud's involvement with the Dinex Restaurants, as well as Defendants' unified operation of the Dinex Restaurants. F&S also prepared approximately 20 exhibits – such as news articles, wage and hour records, and job descriptions – for use at each deposition.

36. On May 28, 2013, Defendants sent another letter to F&S regarding opt in Plaintiffs' responses to discovery requests, stating that Defendants had not received verified discovery responses from 24 opt in Plaintiffs in violation of the Court's order that all opt in plaintiffs respond to discovery.

**Continued Settlement Discussions**

37. Following completion of the four additional depositions, the parties renewed settlement discussions and negotiations of a collective-wide settlement.

38. On July 8, 2013, F&S met with Roman for approximately one hour to discuss the strength and weaknesses of the case and the parameters of a collective-wide settlement.

39. Following additional extensive negotiations, the parties reached an agreement in principle to settle the case on a collective-wide basis. Over the next few months, the parties negotiated the specific terms of the settlement and drafted a comprehensive settlement agreement.

40. On October 24, 2013, F&S met with Roman for approximately 1.5 hours to discuss the terms of the settlement.

41. On November 1, 2013, the parties notified the Court that a settlement had been reached. *See* ECF No. 122.

**Reopening the Case**

42. On November 27, 2013, the parties informed the Court that the settlement agreement had not been signed, and requested that the matter be restored to active status. *See* ECF No. 123. While the Court denied this request, a status conference was scheduled for December 13, 2013.

43. At the December 13, 2013 conference, the parties discussed complications surrounding the execution of the settlement agreement, namely that Roman was unwilling to sign the agreement. The Court thereby instructed the parties to amend the caption to add Daniel Jones ("Jones") as a party Plaintiff and class representative, and to have Jones sign the settlement agreement on behalf of the Collective. Additionally, the Court directed Plaintiffs to file a motion for approval of the settlement once the agreement was fully executed.

44. In accordance with the Court's instructions, Jones was added to the caption on or around December 17, 2013. *See* ECF No. 125. The parties also finalized a Collective Action Settlement Agreement and Release of all Wage and Hour Claims ("Settlement Agreement"), which was signed by Jones on January 14, 2014. *See* **Exhibit ("Ex.") A**, Settlement Agreement.

45. On January 15, 2014, F&S met with Roman for approximately one hour to discuss the settlement.

46. The Settlement Agreement was duly executed by Defendants on January 21, 2014.

## **SETTLEMENT AGREEMENT**

**The Settlement Amount is Fair, Reasonable, and Adequate**

47. The settlement amount is a compromised figure. The facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. The factual nature of the claims and defenses, including the issues of whether polishers and expediters were properly included in the tip pool and whether a conflict of interest existed between Collective members, presented challenges to establishing certification of the FLSA collective and liability.

48. In reaching the settlement, F&S took into account the risks of establishing liability, and also considered the time, delay, and financial repercussions in the event of trial and appeal by Defendants. Although Plaintiffs believe their claims have merit, they recognize the legal, factual and procedural obstacles to recovery, as Defendants have and will continue to vigorously contest Plaintiffs' claims if the action does not settle. By way of comparison, in a class/collective action case asserting FLSA and NYLL violations that is currently being prosecuted by F&S, the parties collectively took 18 depositions and exchanged over 380,000 pages of discovery. *See Karic v. The Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (ENV)(CMP) (E.D.N.Y.). That case has lasted over four years and is still pending. *See Id*. In light of the strengths and weaknesses of the case, F&S believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and opt in Plaintiffs in the face of significant obstacles.

49. The settlement negotiations were at all times hard fought and arm's length, and they have produced a result that F&S believes to be in the best interests of the Collective in light of the costs and risks of continued litigation. Moreover, in our estimation, and based on the data

provided by Plaintiffs, opt in Plaintiffs, and Defendants, the settlement represents a significant percentage of the recovery that the Collective would have achieved had they prevailed on all of their claims and survived an appeal.

**The Terms of the Settlement Agreement**

50. The parties have agreed to settle all of 88 Collective members' claims. In exchange for Defendants' agreement to settle the lawsuit, the Collective agrees to release and discharge their wage and hour claims under the FLSA and NYLL, as described in the Settlement Agreement.

51. The Settlement Agreement creates a fund of $           (the "Fund"). *See* **Ex. A**, Settlement Agreement ¶ 2.1(a). The Fund covers individual settlement awards, attorneys' fees and costs, an incentive award to Roman, and one-half of the administration costs. *See Id.* ¶ 2.1(d), 2.2(a), 2.3(a).

52. A claims administrator will be responsible for mailing the notice to Plaintiffs and opt-in Plaintiffs, receiving any opt-out statements, and distributing settlement checks. *See Id.* ¶ 2.1(b-d). Defendants will pay for half of the claims administrator's fee, with the remaining half being paid from the Fund. *See Id.* ¶ 2.1(c).

53. The proposed Notice of Collective Action Settlement (the "Notice") alerts the Collective to the terms of the settlement, informs them of the scope of the release, and informs them that they may opt-out of the settlement by mailing a written, signed statement to the Claims Administrator within 30 days stating that they wish to exclude themselves from the settlement in the lawsuit against The Dinex Group. A copy of the proposed Notice is attached hereto as **Exhibit B**.

54. The Settlement Agreement provides that every Collective member who does not timely opt out of the settlement shall release Defendants from any and all FLSA and NYLL wage and hour claims. *See* **Ex. A**, Settlement Agreement ¶ 1.8(a).

55. The Fund shall be distributed to Collective members based on each member's work location, hours worked, wage and tip records, and whether the individual responded to Defendants' discovery requests. Specifically, Collective members who worked at: Daniel shall receive four points per hour worked; Bar Boulud shall receive three points per hour worked; DBGB shall receive two points per hour worked; Boulud Sud shall receive ½ point per hour worked. Additionally, Collective members who responded to Defendants' discovery requests will receive double the allocation as recognition for their responding to discovery and Defendants' threat to file a motion to dismiss any opt-in Plaintiff who did not respond to discovery. *See Id.* ¶ 1.10.

**Incentive Award**

56. Pursuant to the Settlement Agreement, and subject to Court approval, named Plaintiff Graciela Roman will receive an incentive award of $█████, in addition to her individualized award under the allocation formula, in recognition of the services she has rendered on behalf of the Collective. *See Id.* ¶ 2.3.

57. Roman was instrumental to the initiation and prosecution of this action, and expended considerable time and effort to assist F&S with this case. The services provided by Roman included, but were not limited to, informing counsel of the facts initially and as the case progressed, providing counsel with relevant documents in her possession, informing putative plaintiffs of the lawsuit and encouraging them to participate (28 individuals joined the case prior to the issuance of notice), communicating with opt-in Plaintiffs and relaying information to F&S, preparing a declaration and assisting F&S with their motion for conditional certification, preparing and appearing for depositions, and assisting counsel to prepare for settlement discussions.

58. In agreeing to bring the action in her name, Roman also undertook a significant risk that she would be retaliated against by Defendants and/or "black balled" in the industry for the sake of the Collective.

59. The proposed Notice informs the Collective that a sum of $ ▮ will be paid to Roman as an incentive award.  *See* **Ex. B**, Notice at page 2.

**Attorneys' Fees and Litigation Costs**

60. Pursuant to the Settlement Agreement, F&S requests attorneys' fees and costs of $ ▮, equal to one-third of the Fund ($ ▮) plus $ ▮ in litigation costs and out of pocket expenses incurred by F&S in prosecuting and successfully resolving this matter. *See* **Ex. A,** Settlement Agreement ¶ 2.2.

61. The proposed Notice informs the Collective that a sum of $ ▮ will be paid to F&S as attorneys' fees and costs.  *See* **Ex. B**, Settlement Notice at page 2.

62. As of January 23, 2014, F&S had spent more than 865.5 hours litigating and settling this case, which includes approximately 627.2 attorney hours, 190.9 paralegal hours, and 47.4 administrative hours.  Throughout the litigation, F&S has been available to clients around the clock via cell phone and email.  Additionally, F&S anticipates expending more hours after the date of this motion in administering the Settlement, which we expect will require a substantial commitment of time.

63. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney and law clerk participating in the case.

64. Due to the experience of its attorneys in representing workers in litigation of this type, F&S utilizes a small team of attorneys to minimize duplication of efforts and maximize both efficiency and billing judgment.

65. F&S ordinarily and regularly bills legal time on an hourly fee basis by the tenth of an hour, based upon each attorney's standard hourly rate. Currently, F&S's complex litigation rates range from $425.00 per partner's hour, $250.00 to $275.00 per associate's hour, $125.00 per law clerk's hour, and $100.00 per administrative assistant's hour. The firm's clients regularly accept and pay F&S's hourly rates.

66. Below is a chart summarizing the specific attorneys, their hourly rates, and their total time worked on this matter, in addition to the total law clerk and administrative assistant time spent by F&S on this matter:

| INDIVIDUAL | HOURLY RATE | TOTAL HOURS | FEES |
|---|---|---|---|
| Brian S. Schaffer, Partner | $425 | ■ | $■ |
| Joseph A. Fitapelli, Partner | $425 | ■ | $■ |
| Eric J. Gitig, Associate | $275 | ■ | $■ |
| Frank Mazzaferro, Associate | $250 | ■ | $■ |
| Andrew Kimble, Associate | $250 | ■ | $■ |
| Law Clerks[1] | $125 | ■ | $■ |
| Administrative Assistant | $100 | ■ | $■ |
| **TOTALS:** | | ■ | $■ |

67. The requested attorneys' fees are not based solely on time and effort already expended, they are also meant to compensate F&S for time that they will be required to spend administering the settlement in the future. For example, F&S anticipates that it will be required to respond to numerous inquiries from Collective members requesting information regarding the terms of the settlement and the amount of their settlement award. F&S also anticipates spending additional time with respect to administering the settlement and responding to Collective members' inquiries, especially after checks are issued, and the requested fee award is meant to compensate F&S for that time. In F&S's experience, administering collective settlements of this

---

[1] Each law clerk was a second year law student, a third year law student, or a J.D. at the time their work was performed.

nature and size requires a substantial and ongoing commitment.

68. F&S's request for one-third of the fund, or $███████, is below their current lodestar of $███████.

69. In F&S's experience, New York City law firms that represent plaintiffs in employment matters typically charge their clients at least one-third of their gross recoveries when they represent them on a contingency basis.

70. F&S incurred the following in out-of-pocket costs prosecuting the litigation, which were incidental and necessary to the representation of the collective:

| Deposition Transcripts/Videos | $███████ |
|---|---|
| FedEx | $███ |
| Filing | $███ |
| Meals | $███ |
| New York Supreme Court (copying expenses) | $███ |
| Service (complaint) | $███ |
| Transportation | $███ |
| **TOTAL EXPENSES:** | $███████ |

71. F&S undertook to prosecute this action without an assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Attorneys undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. F&S stood to gain nothing in the event the case was unsuccessful.

72. To date, F&S has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

73. Based upon F&S's records, the majority of F&S's cases are based on pure contingency, this includes all of F&S's out of pocket costs and expenses. Thus, when F&S lawyers spend time on selected contingency matters, they do so at significant risk and opportunity for the firm. F&S frequently turns away cases, including hourly litigation matters and other contingency matters, in order to enable its attorneys to work on pending contingency matters, primarily (though not exclusively) class or collective actions.

74. F&S has significant experience prosecuting wage and hour class and collective actions such as this one. I have prosecuted wage and hour cases that have been certified as class actions with F&S being appointed class counsel, including: *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (WHP) (RLE), 2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013); *Tiro v. Pub. House Investments, LLC*, 11 CIV. 7679 CM, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013); *Ryan v. Volume Services America, Inc.*, No. 652970/2012 (MLS), 2012 N.Y. Misc. LEXIS 932 (N.Y.Sup.Ct. Mar. 7, 2013); *Chang v. BD Stanhope, LLC*, No. 10 Civ. 8577 (TPG), Docket No. 48 (S.D.N.Y. Nov. 15, 2012); *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 4748101 (S.D.N.Y. Oct. 4, 2012); *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019 (S.D.N.Y. July 6, 2012); *Matheson v. The Glazier Group, Inc.*, No. 09 Civ. 4212 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011); *O'Dell. v. AMF Bowling Centers, Inc.*, No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009).

75. I have prosecuted wage and hour cases that have been certified as collective actions with F&S being appointed class counsel, including: *Carpenter v. Paige Hospitality*

*Group, LLC,* No. 13 Civ. 4009 (GBD) Docket No. 35 (S.D.N.Y. Nov. 11, 2013); *Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 8345 (NRB), 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013); *Jones v. Sho Riki, Inc.*, No. 13 Civ. 2837 (TPG), Docket No. 11 (S.D.N.Y. July 18, 2013); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (ALC)(SN), Order (S.D.N.Y. June 20, 2013); *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367 (JBW)(RML), Order (E.D.N.Y. Apr. 17, 2013); *Novozhilova v. God Save The King, LLC*, No. 12 Civ. 7572 (RA), Docket No. 16 (S.D.N.Y. Dec. 14, 2012); *Roman v. The Dinex Group, LLC*, No. 11 Civ. 6156 (AKH), Docket No. 53 (S.D.N.Y. Nov. 28, 2012); *Sorman v. Aurora Catering, Inc.*, No. 12 Civ. 3226 (KBF), Docket No. 23 (S.D.N.Y. Aug. 28, 2012); *Hidalgo v. New York State Catholic Health Plan, Inc.*, No. 11 Civ. 4673 (FB)(JMA), Docket No. 39 (E.D.N.Y. June 20, 2012); *Salomon v. Adderley Indus., Inc.*, No. 11 Civ. 6043 (PAC), 2012 WL 716197 (S.D.N.Y. Mar. 6, 2012); *Karic v. The Major Automotive Companies, Inc.*, 799 F. Supp. 2d 219 (E.D.N.Y. 2011); *Carver v. CFR2, LLC*, No. 11 Civ. 03738 (S.D.N.Y. 2011); *Rivera v. Morales*, No. 11 Civ. 02567 (S.D.N.Y. 2011); *Wulff v. 17th Street Entertainment II LLC*, No. 10 Civ. 2559 (CM)(JCF), Docket No. 17 (S.D.N.Y. May 27, 2010); *Tezuka v. E. Ochi, Inc.*, No. 09 Civ. 10140 (S.D.N.Y. 2009); *Levine v. Merrill Lynch, Pierce, Fenner & Smith Incorporated*, No. 09 Civ. 304 (S.D.N.Y. 2009).

76.     I received a Juris Doctor degree (dean's list) from New York Law School in 2003. I was admitted to the bar of the State of New York in 2004, and am also admitted to the bars of the Second Circuit Court of Appeals and the United States District Courts for the Eastern and Southern Districts of New York. I am a member in good standing of each of these bars. I became a partner of F&S in January 2008. Prior to starting F&S, I was employed by The Law Firm of Louis Ginsberg, P.C., a firm that specializes in the representation of individuals in employment law. Thereafter, I was employed by two civil litigation firms in Manhattan,

Freiberg & Peck, LLP and Weiner, Millo & Morgan, LLC.  Since starting F&S in 2008, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.  I am a member of the National Employment Lawyers Association ("NELA") and NELA's New York Chapter.  In addition to being a member of NELA, I have also served as a panelist at CLE presentations for wage and hour issues.  I have frequently been contacted by the media and the press to discuss current employment law related issues.

77.    Joseph A. Fitapelli became a partner of F&S in January 2008.  Mr. Fitapelli graduated from Saint Francis College in 1998 and received a J.D. from New York Law School in 2001.  Prior to starting F&S, Mr. Fitapelli was employed by Abrams, Gorelick, Friedman & Jacobson, P.C., and Weiner, Millo & Morgan, LLC, two well-respected civil litigation firms in Manhattan.  Mr. Fitapelli is licensed to practice law in the State of New York and is admitted in the Southern and Eastern Districts of New York, as well as the Second Circuit Court of Appeals.  Mr. Fitapelli has successfully argued cases in the New York State Appellate Division, First and Second Departments.  Mr. Fitapelli is an active member of NELA and its New York affiliate.

78.    Eric J. Gitig has been employed as an associate at F&S since September 2009.  Mr. Gitig graduated from the University of California Los Angeles in 2001, and the Benjamin N. Cardozo School of Law in 2009, where he was a Dean's scholarship recipient.  While in law school, Mr. Gitig participated in two coveted internships with the New York City Mayor's Office of Labor Relations and the United States Department of Labor.  During the four years that Mr. Gitig has worked at F&S, he has exclusively represented plaintiffs in employment litigation and other employee rights matters – specializing in wage and hour class/collective actions – and has successfully litigated and resolved cases as both a supporting and lead attorney.  Mr. Gitig is licensed to practice law in the State of New York and the Southern and Eastern Districts of New York.

79. Frank Mazzaferro has been employed at F&S since September 2010 as an intern (2010 to 2011), law clerk (2011), and associate (2011 to present). Mr. Mazzaferro graduated from the State University of New York at Fredonia in 2006, and New York Law School in 2011. While in Law School, Mr. Mazzaferro served as a member of the New York Law School Moot Court Association where he was elected the Association's Wagner Chair and ran New York Law School's employment law competition. In Addition, Mr. Mazzaferro served as a Staff Editor of the Media Law and Policy Journal where his work focused on the relationship between emerging technologies and employment law. Mr. Mazzaferro is licensed to practice law in the State of New York and the Southern and Eastern Districts of New York.

80. Andrew Kimble has been employed as an associate at F&S since February 2013. Mr. Kimble graduated from the University of Dayton in 2007, and the Benjamin N. Cardozo School of Law in 2011, *cum laude*. Prior to joining F&S, Mr. Kimble was an associate at Valli Kane & Vagnini LLP, where he exclusively represented plaintiffs in employment litigation and other employee rights matters – specializing in class/collective actions. Mr. Kimble is licensed to practice law in the State of New York and the Southern and Eastern Districts of New York.

81. F&S's skill and experience were directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees.

82. Based on F&S's extensive experience in precisely this type of litigation and our thorough familiarity with the factual and legal issues in this case, we have reached the firm conclusion that the proposed settlement is clearly in the best interests of the named and opt in Plaintiffs. In my estimation, the settlement represents a significant percentage of the recovery that the collective would have achieved had they prevailed on all of their claims and survived an appeal.

**EXHIBITS**

1. Attached as **Exhibit A** is a true and correct copy of the Collective Action Settlement Agreement and Release of all Wage and Hour Claims ("Settlement Agreement"), which was fully executed by the parties on January 21, 2014.

2. Attached as **Exhibit B** is a true and correct copy of the proposed Notice of Collective Action Settlement ("Notice").

\*       \*       \*

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 29th day of January, 2014
New York, New York

/s/ Brian S. Schaffer
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and
the Collective*